UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH LaPAGLIA, | : |
| Plaintiff, | : |
| | : |
| v. | : 3:07-cv-0677 (WWE) |
| | : |
| ABIGAIL L. HUGHES, | : |
| Defendant. | : |

**MEMORANDUM OF DECISION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action arises from plaintiff Joseph LaPaglia's employment with the Connecticut Technical High School System ("CTHSS"). Plaintiff alleges that defendant discriminated against him because of his age in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Now pending before the Court is defendant's Motion for Summary Judgment (Doc. #31). For the reasons which follow, the motion for summary judgment will be granted.

The Court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

The parties have submitted briefs, a stipulation of facts and supporting exhibits, which reflect the following factual background.

Plaintiff has been employed by CTHSS for over twenty-three years, holding a variety of positions including blueprint reading instructor, reading instructor and math lab instructor. He is presently employed at Ella Grasso Technical High School, where he has been for four years. Before that, he was a blueprint reading instructor and a math lab instructor at Henry Abbott Technical High School for a year. Prior to that, he

1

taught only math at Kaynor Technical High School, although he testified that his title was that of a blueprint reading instructor.

After the passage of the No Child Left Behind Act ("NCLB"), CTHSS, under the leadership of former Superintendent of Schools, Dominic Spera, began changing the curriculum. Spera proposed replacing blueprint reading in the curriculum with additional classes in mathematics and reading so as to free up resources within the CTHSS and meet the mandates of NCLB. Defendant Dr. Abigail Hughes, as Superintendent of CTHSS, approved the curriculum change and notified all CTHSS administrators and the leadership of the teachers' union.

In the spring of 2004, defendant directed each school principal to determine the best means for implementing the curriculum change, including whether to eliminate the blueprint reading program from his school. Should the principal decide to eliminate the blueprint reading course, they were to replace it with other coursework.

Kaynor Technical decided during the 2003-04 school year to eliminate blueprint reading from the curriculum for the 2004-05 school year. Plaintiff received notice by letter from defendant dated May 19, 2004 of this change effective August 31, 2004. In that letter, defendant stated that her staff would help plaintiff find placement in lieu of layoff.

In June 2004, plaintiff elected to bump a less senior blueprint reading instructor at Abbott Technical for the 2004-05 school year. On April 25, 2005, defendant notified plaintiff that based on student enrollment and other considerations, the blueprint reading instructor position at Abbott Technical was being eliminated effective August 24, 2005.

It is not clear where plaintiff worked during the 2005-06 school year. The statement of facts indicates that plaintiff was at Abbott Technical during that school year, but plaintiff's position was eliminated in August 2005, before the 2005-06 school year. This detail is not important to the legal issues to be decided, however.

For the 2006-07 school year, plaintiff bumped a less senior blueprint reading instructor at Grasso Technical. During the 2006-07 school year, it was decided to eliminate blueprint reading from the curriculum at Grasso Technical for the 2007-08 school year. On March 28, 2007, defendant notified plaintiff of this decision. On April 12, 2007, Edward Pierce, Education Principal Labor Relations Specialist with the State of Connecticut Department of Education, informed plaintiff that a blueprint reading instructor position at Ellis Tech had been filled by another instructor who had more seniority. Pierce encouraged plaintiff to apply to other positions for which he was qualified. In the summer 2007, plaintiff was offered a position in the Student Achievement Incentive Lab ("SAIL"), a 32-hour position which plaintiff chose to take instead of being laid off. He remains in that position at Grasso Technical.

While at Kaynor Technical, plaintiff was not demoted, suspended or terminated. Plaintiff filed a CHRO complaint against CTHSS in 2005 because of, he stated, an impending change of curriculum. However, the blueprint reading program at Kaynor Technical had not yet been eliminated when plaintiff filed his CHRO complaint. Additionally, at the time, plaintiff had yet to suffer any change to the terms or conditions of his employment.

In his deposition, of which the Court has discontinuous excerpts, plaintiff claims that he applied for and was denied several positions because, defendant told him, he

3

was ineligible.  Specifically, plaintiff applied for a position as a math lab instructor but was unable to bump into such a position because he had not taught math lab in the previous five years despite being certified to do so.  Plaintiff also applied for and was denied positions as a machine shop instructor and a cooperative work experience coordinator.  According to defendant, plaintiff was not qualified for and/or eligible to bump into either position.  As to the machine shop position, plaintiff was ineligible to bump an existing instructor because he had never taught the course full-time.  In addition, plaintiff applied to transfer to a position as a Dean of Students, which was denied because he had not been one within the previous five years.  According to Cheryl Fredette, this position was filled by an individual who had been a Dean of Students.  Plaintiff grieved this rejection; such grievance was denied.

In an article in the New Britain Herald, Tom Murphy, referred to as the spokesman for the state technical high school system, stated that CHTSS had to "tighten up because of federal cuts.  We're letting some of our older teachers phase out."  Scott Whipple, E.C. Goodwin Tech cuts 2 shops, New Britain Herald, Apr. 4, 2007.  Following this article, Aaron Silvia, President of the State Vocational Federal of Teachers, wrote a letter asking defendant to explain Murphy's statement.  According to the record, defendant did not reply.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24. The mere of existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

To establish liability under section 1983, plaintiff must demonstrate (1) that the conduct in question deprived him of a right, privilege, or immunity secured by the laws of the United States, and (2) that the acts were attributable at least in part to Hughes

acting under color of state law.  Garcia v. Brown, 268 Fed. Appx. 127, 129 (2d Cir. 2008).  In this context, the federal law underlying plaintiff's claim is the Age Discrimination in Employment Act ("ADEA").[1]  The ADEA prohibits treating an age-protected individual less favorably than other individuals on account of his age.  29 U.S.C. § 623(a); Stanojev v. Ebasco Servs, Inc., 643 F.2d 914, 923 (2d Cir. 1981).  A cause of action under the ADEA requires evidence that plaintiff's age was a factor that made a difference in deciding conditions of plaintiff's employment.  Geller v. Markham, 635 F.2d 1027, 1035 (2d Cir. 1980).  The ADEA requires that "an employee's age be treated in a neutral fashion, neither facilitating nor hindering advancement, demotion or discharge."  Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982).

Where there is no direct evidence of discrimination, an ADEA claim is analyzed under the shifting burdens described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).[2]  Under this rubric, plaintiff must first establish a prima facie case of discrimination.  Getschmann v. James River Paper Co., Inc., 822 F.Supp. 75, 77 (D. Conn. 1993).  Defendant must then articulate a legitimate, non-discriminatory reason for taking the actions that establish the prima facie case.  The reason provided must be both "clear and specific."  Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985).  If defendant satisfies this requirement, plaintiff must show that defendant's proffered

---

[1] Plaintiff could not bring an action under the ADEA against Hughes.  As an individual, she cannot be held liable under that statute.  See Martin v. Chemical Bank, 1997 U.S. App. LEXIS 32022, *8-9 (2d Cir. Nov. 10, 1997).

[2] An ADEA claim is analyzed pursuant to the same framework applicable to Title VII as considered in McDonnell Douglas.  Scaria v. Rubin, 117 F.3d 652, 653 (2d Cir. 1997).

reason is a pretext for discrimination.  Plaintiff is not required to prove that the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision, but only that those were not the only reasons and that plaintiff's protected status contributed to the employer's decision.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 78 (2d Cir. 2001).  At all times, plaintiff bears the burden of persuading the trier of fact that the defendant intentionally discriminated against him.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

A prima facie case under the ADEA requires that plaintiff show that (1) he was a member of the statutorily age-protected group of 40 to 70 years old; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.  Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003).  At this stage, plaintiff's burden is minimal.  Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997).

Numerous courts have held that what is important in establishing a prima facie case under the ADEA is not whether the selected applicant was a member of the ADEA class or not, but rather the significance of the age difference between the plaintiff and the selected applicant.  As the Supreme Court observed, "the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."  O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313

(1996).  Therefore, courts have found the following sufficient to support an inference of age discrimination: (1) the hiring of a 47-year old applicant and a 42-year old applicant over a 50-year applicant, D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193 (2d Cir. 2007); (2) the replacement of a 57-year old employee with a 47-year old employee, Balut v. Loral Elec. Sys., 166 F.3d 1199 (2d Cir. 1998); and (3) the replacement of a 57-year old employee with one who was 46 years old and one a year younger.  Hollander v. Am. Cyanide Co., 172 F.3d 192 (2d Cir. 1999).

At age 50, plaintiff is within the protected class of the ADEA.  In addition, he can claim an adverse employment action in his failure to be promoted or transferred into the four positions for which he applied – math lab instructor, machine shop instructor, cooperative work experience coordinator and Dean of Students.

Next, plaintiff must demonstrate that he was qualified for these positions.  Here, he fails.  Defendant has offered evidence that plaintiff was not qualified for the various positions to which he applied and/or that he was not eligible to transfer into those positions based either on seniority, certifications or credentials.  Plaintiff does nothing to demonstrate that he was qualified or eligible for these positions.  Further, to the extent that plaintiff's claim is premised on the elimination of the blueprint reading instructor position, he offers no evidence that the positions were eliminated for reasons aside from the budgetary reasons proffered by defendant.

Plaintiff also does not offer any evidence regarding the people who were ultimately hired for the positions that for which he applied.  Without evidence of their ages, a reasonable jury could not find that plaintiff was discriminated against based on his age.  See Balut v. Loral Elec. Sys., 1998 U.S. App. LEXIS 31455 (2d Cir. Dec. 15,

1998) (affirming summary judgment where plaintiff failed to demonstrate that defendant's reason for layoff was pretextual).

Because the Court finds that plaintiff was not qualified and/or eligible for the positions that he applied for, it will not address Murphy's statement in the New Britain Herald. Even if the Court were to find that Murphy's statement demonstrated a discriminatory animus, plaintiff has not offered any evidence that defendant was aware of Murphy's statement or the message behind it or that she acquiesced to it.

To establish a 1983 claim, plaintiff must show that defendant "directly participated in the violation [or] failed to remedy the violation after learning of it through a report or appeal," Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 136 (2d Cir. 1999), or that they exercised "gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Personal involvement is a prerequisite to the assessment of damages, and respondeat superior is an inappropriate theory of liability. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). The Second Circuit Court of Appeals has held that an individual defendant may be held liable pursuant to section 1983 as a supervisor in several circumstances:

> The defendant may have directly participated in the infraction.... A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong.... A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue.... Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event....

Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

The Court is not aware of Murphy's role at the CTHSS or defendant's control

over him. Absent more factual support, a reasonable jury could not conclude that defendant has the requisite personal involvement to create liability under 42 U.S.C. § 1983.

Plaintiff has withdrawn his procedural due process claim. Therefore, summary judgment is appropriate as to the whole of plaintiff's claim under the Fourteenth Amendment and section 1983.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment (Doc. #31). The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 21st day of April, 2009.

                                        /s/
                                      Warren W. Eginton
                                      Senior United States District Judge